IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PC PAL SOLUTIONS, INC.,

     Plaintiff,

v.                           Case No.:  8:21-CV-01464-MSS-TGW

UMA EDUCATION, INC.,

     Defendant.

_____/

**PC PAL SOLUTIONS, INC.'S RESPONSE
IN OPPOSITION TO UMA EDUCATION, INC.'S MOTION
TO DISMISS WITH SUPPORTING MEMORANDUM OF LAW**

Plaintiff, PC Pal Solutions, Inc. ("PC Pal") requests that the Court deny the motion to dismiss filed by Defendant UMA Education, Inc. ("UMA") (D.E. 11).  The Court should deny UMA's motion to dismiss because PC Pal has properly pled a plausible claim of copyright infringement.  As described more fully below, PC Pal's complaint meets the applicable pleading requirements and clearly sets forth straightforward and detailed factual allegations which show PC Pal's entitlement to relief for copyright infringement for UMA's intentional violations of federal copyright law.

**THE FACTUAL BACKGROUND OF THIS DISPUTE**

The facts underlying this dispute are simple, are easily understood, and are clearly described in the complaint.  For the Court's convenience, key factual

allegations within the complaint are repeated here with reference to the numbered paragraphs of the complaint.

PC Pal is a small company which creates and provides training, training materials, and courseware for use in a variety of settings, including the private educational arena. (¶ 2) PC Pal is the owner of a registered copyright for a work entitled Discover Office 2016 Comprehensive (¶ 3) ("the Copyrighted Work"). PC Pal's copyright registration is attached to the complaint.

UMA is an accredited healthcare educational institution which provides healthcare-related education to tuition-paying students. (¶ 9) Like any educational institution, UMA obtains content created by others and uses that content in the education of its students.

PC Pal created proprietary course materials, including materials appropriate for use in introduction to computers, office applications, and computer fundamentals courses. (¶ 15) These proprietary course materials constitute the Copyrighted Work. A description of the content of the Copyrighted Work is attached to the complaint. PC Pal provided its Copyrighted Work to UMA pursuant to an agreement between PC Pal and a third party educational publisher and distributor of educational materials, Pearson Education, Inc. ("Pearson"). Pearson paid PC Pal for the right to distribute the PC Pal content within its network of educational institutions, including UMA. (¶ 12) In turn, UMA paid Pearson.

The Copyrighted Work created by PC Pal in 2015 was supplied to UMA beginning in the Spring of 2018 and was delivered to UMA in various formats. (¶ 17)  Once in possession of the PC Pal-created content, UMA controlled access to the content through its internal Learning Management System.  (¶ 18)  Only those students and teachers who were assigned the courses with PC Pal-created content and were provided with the required usernames and passwords could gain access to the PC Pal-created Copyrighted Work.  (¶ 18)

UMA  paid a fee to Pearson for each student who enrolled in each course using PC Pal course content.  PC Pal was well-known to UMA, and UMA reported student enrollment figures directly to PC Pal along with Pearson on a monthly basis during the time UMA was authorized to use PC Pal's Copyrighted Work.  (¶ 19)  In anticipation of the expiration of the Pearson-PC Pal contract in the summer of 2018, UMA's staff approached PC Pal directly about future use of PC Pal content because UMA, as a large and sophisticated operator in the educational space, knew that it could not continue to use PC Pal's Copyrighted Work without an agreement in place.  (¶¶ 24, 27)  After working extensively with PC Pal regarding possible future use of PC Pal's content, however, UMA unexpectedly shifted course and abruptly ended its discussions with PC Pal about future use. (¶ 25)  On July 31, 2018, the PC Pal-Pearson contract ended.  (¶ 22)  At that point, UMA was no longer an authorized user of PC Pal's Copyrighted Work.  (¶ 23)

Several months later, PC Pal became aware of UMA's continued use of PC Pal's content by allowing UMA students and faculty access to the course materials. UMA neither paid for nor reported its extensive use of the Copyrighted Work. (¶ 26) Once PC Pal confirmed the infringing use of its content, PC Pal brought the matter to the attention of UMA, demanded that UMA cease using its content, and sought appropriate compensation for the infringement. When lengthy discussions and a mediation between the parties reached impasse, PC Pal filed this action for copyright infringement. UMA then filed its motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6).[1]

## THE LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

The Court's consideration of a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is necessarily undertaken in the context of the facts alleged and the applicable substantive law. Copyright protection exists "in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). An owner of a copyright has the "exclusive rights

---

[1] In its motion to dismiss, UMA refers to matters outside the complaint apparently in an attempt to denigrate PC Pal's complaint by accusing PC Pal of withholding information during pre-litigation discussions. (Motion to Dismiss at p. 4) UMA's reference is entirely inapposite, but does invite a discussion welcomed by PC Pal about the one-sided flow of information and documents from PC Pal to UMA during the 15 months PC Pal has tried in good faith to resolve this dispute.

4

to do and to authorize" the reproduction of copyrighted works, the preparation of derivative works of the copyrighted works, the distribution of copies of the copyrighted work to the public, and to display publicly the … copyrighted works. 17 U.S.C. § 106.  Anyone who violates any of the exclusive rights of the copyright owner as provided by section 106 through 122 … "is an infringer of the copyright." 17 U.S.C. § 501(a).

The Court's analysis of a Rule 12((b)(6) motion is guided by Federal Rule of Civil Procedure 8 and the United States Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As succinctly described by this Court in analyzing (and denying) a defendant's motion to dismiss in a copyright infringement case:

> Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'  Fed. R. Civ. P. 8(a)(2).  This obligation 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  To survive dismissal, the factual allegations must be 'plausible' and 'must be enough to raise a right to relief above the speculative level.'  *Id*. at 555. *See also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). This requires 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).
>
> …
>
> 'When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'  *Iqbal*, 566 U.S. at 679.

5

*Kirby Rambo Collections, Inc. v. Lee County,* 2018 WL 2298623 (M.D. Fla. 2018).

*Iqbal*'s discussion of *Twombly* recognizes that determining whether well-pleaded facts plausibly suggest an entitlement to relief is a "context-specific task" that calls upon a reviewing court "to draw on its judicial experience and common sense." *See id.* at 15.

## THE COMPLAINT STATES
## A CLAIM FOR COPYRIGHT INFRINGEMENT

PC Pal's complaint clearly states a plausible claim for copyright infringement and the Court should deny UMA's Rule 12(b)(6) motion. The complaint identifies PC Pal's ownership of a valid copyright in specific original work which was infringed by specific and intentional acts of a sophisticated, unauthorized user. As described more fully below, UMA's claimed deficiencies are a combination of non-substantive, trivial complaints which can be easily addressed through discovery if UMA seriously questions the validity of PC Pal's copyright.[2]

### A.    PC Pal's Copyright Registration is Valid

UMA contends that PC Pal's complaint should be dismissed because PC Pal's copyright registration is invalid. UMA is wrong.

---

[2] Interestingly, UMA's motion challenges a number of the facts alleged in the complaint, but does not contest that UMA continued to use PC Pal's Copyrighted Work after its right to do so expired.

First, UMA argues that PC Pal has identified an incorrect year of completion of its copyrighted work. UMA bases its assertion on a single sentence in the complaint – paragraph 15. Paragraph 15 states, "PC Pal created and supplied the Copyrighted Work for distribution and display in several 'introduction to computing' courses for UMA in the Spring of 2018."

The copyright registration attached to the complaint correctly identifies the year in which the work was completed – 2015. The complaint does not state otherwise; a fair reading of paragraph 15 of the complaint states that the work was created and then supplied to UMA in the Spring of 2018. The year "2018" in paragraph 15 of the complaint modifies the verb "supplied". UMA's tortured reading of paragraph 15 and PC Pal's arguable grammatical imprecision are not the stuff of dismissal. This is a simple matter which can be easily confirmed in discovery, just like every other assertion in the complaint.

Second, UMA asserts that PC Pal's Copyrighted Work was published prior to registration in 2018 and should have been registered as a "published work" rather than as an "unpublished work."[3] UMA bases this assertion on the same sentence in the complaint – paragraph 15. Here, in a disingenuous sleight of hand, UMA reverses course, agrees that the copyright registration accurately identifies the date

---

[3] As the Court knows, both "unpublished" and "published" works are registerable. A statement in a copyright application that a work is "unpublished" which is proven to be incorrect by record evidence would not preclude registration of the work as a "published" work.

of creation of the Copyrighted Work in 2015 and then contends that the copyright registration does not identify PC Pal's work as having been previously published. UMA's argument fails because UMA has misread both the complaint and the applicable authority on this issue.

PC Pal's copyright registration properly identifies the Copyrighted Work as a work which was created in 2015, but was "unpublished" prior to registration. As stated clearly in paragraph 18 of the complaint, the distribution of PC Pal's Copyrighted Work prior to registration was limited. Only those UMA students and teachers who were assigned the UMA courses within UMA's Learning Management System had access to the required usernames and passwords and rights to access PC Pal content. (¶ 18 of the complaint) This limited distribution is significant because the term "publication" has a special meaning in federal copyright law.

Section 101 of the Copyright Act defines publication as:

The distribution of copies … of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.

17 U.S.C. § 101. The Compendium of U.S. Copyright Office Practices § 1902 (3d ed. 2021) elaborates and further explains:

The legislative history explains that 'a work is 'published' if one or more copies or phonorecords embodying [the work] are distributed to

the public' **with 'no explicit or implicit restrictions with respect to [the] disclosure of [the] contents [of that work].'**

H.R.REP.NO.94-1476, at 138 (1976), reprinted in 1976 U.S.C.C.A.N. at 5754. (emphasis added) Thus, distribution, by license, to a limited audience with restrictions on further disclosure or distribution does not constitute "publication" for purposes of federal copyright law.

Current copyright law retains the distinction long recognized by courts between "general" publication and "limited" publication. A limited publication is the distribution of copies of a work to a definitely selected group with a limited purpose and without the right of diffusion, reproduction, distribution, or sale. A limited publication is not considered a distribution to the public and, therefore, is not publication. *White v. Kimmell*, 193 F.2d 744 (9th Cir. 1952) (decided under the 1909 act, but with the same policy extended to the 1976 Act as reflected in the legislative history cited by the Copyright Office in its Compendium). Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 4.13 [B] (2019).

The Copyright Office explicitly defers to the applicant, here PC Pal, to make the determination about whether a work is published or unpublished. "The applicant – *not the U.S. Copyright Office* – must determine whether a work is published or unpublished." Compendium 3d § 1904.1. (emphasis added)

When the issue of publication is before the courts *at the urging of a defendant*, as here, such that a finding of publication might divest the work of

9

copyright protection, courts have required a stronger showing of publication by the defendant. *Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023 (9th Cir. 1981). Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 4.13 [C] (2019). UMA has made no such showing here and consequently, UMA's argument on this front fails.

Third, in a strained attempt to describe PC Pal's copyright registration as materially deceptive, UMA accuses PC Pal of impermissibly "attempting to leave open the possibility of claiming statutory damages and attorneys' fees under the Copyright Act." (Motion to Dismiss at p. 10)  However, UMA ignores the impact of Section 412(1) of the Copyright Act (17 U.S.C. § 412(1)) which precludes recovery of statutory damages or attorneys' fees for any infringement of a copyright, like UMA's here, in an unpublished work which occurred before the effective date of the registration.[4]  PC Pal did not plead an entitlement to such relief based upon the information known to it currently.

Despite UMA's flawed arguments, UMA prays for invalidation of PC Pal's copyright and dismissal of PC Pal's complaint with prejudice. Here, again, UMA is wrong.

Invalidating an issued copyright registration certificate pursuant to the provisions of § 411(b) requires three elements – (1) the application must contain

---

[4] The decision of a small company to initially forego the expense of formal copyright registration during its early days of operation is not unusual, particularly here where PC Pal thought it was licensing its original work to trustworthy educational institutions.

inaccuracies,[5] (2) the inaccuracies must be material, and (3) the applicant must have the required scienter of intentional or purposeful concealment. *Roberts v. Gordy*, 877 F.3d 1024 (11th Cir. 2017).  As demonstrated in earlier sections of this response, PC Pal maintains that there are no inaccuracies.  Even if, for the sake of argument, there were inaccuracies in the application, PC Pal had a good faith belief that its representations to the Copyright Office in its application for registration were accurate. There is nothing of record at this stage in this case to support an allegation that PC Pal was engaged in purposeful concealment. Because scienter to mislead the Copyright Office implicates a mental state, this is not an issue that lends itself to resolution on a motion to dismiss. *Arthur Rutenberg Homes, Inc. v. Berger*, 910 F. Supp. 603 (M.D. Fla.  1995). A party which lacks the requisite scienter or possesses no intent to mislead cannot have its certificate of registration invalidated for misstatements or omissions of fact.  *Original Appalachian Artworks, Inc. v. Toyloft*, 684 F.2d 821 (11th Cir. 1982).

The Court should deny UMA's prayer for invalidation and dismissal with prejudice based upon the grounds discussed above.

---

[5] "Inaccuracies" is the term used by the Court in *Roberts v. Gordy*, 877 F.3d 1024 (11th Cir. 2017) while the statute contains the term "inaccurate information."  To the extent that the matter of whether the Copyrighted Work was "published" or "unpublished" prior to registration – an issue raised by UMA – is a legal conclusion and, therefore, is not a fact which can be "inaccurate," UMA's contentions may not satisfy even the first element of a 17 U.S.C. § 411(b) claim.

**B.    PC Pal's Complaint Sufficiently Identifies The Copyrighted Work and UMA's Infringement**

UMA next claims that PC Pal "fails in its burden of identifying the Copyrighted Work covered by its copyright registration and allegedly infringed by UMA".  UMA goes so far as to state that it (UMA) cannot "ascertain precisely what [PC Pal] claims is protected by its copyright registration and what elements of the Copyrighted Work were allegedly infringed." (Motion to Dismiss at p. 11)

PC Pal's complaint is more than sufficient to give notice to UMA as to specifics of the Copyrighted Work and the infringement by UMA.  More specifically, UMA is well familiar with the Copyrighted Work, as pled in the complaint:

a.    The Copyrighted Work is the work encompassing PC Pal proprietary content provided by PC Pal to UMA (¶ 10);

b.    The Copyrighted Work is the content for which UMA paid a fee based on the number of enrolled students (¶ 13);

c.    The Copyrighted Work is the content with respect to which UMA reported course enrollment figures to PC Pal  (¶¶ 14 and 19);

d.    The Copyrighted Work is the content encompassing UMA courses CI 1000, CI 2000, and CI 1170  (¶ 16);

e.    The Copyrighted Work was the content delivered to UMA in several formats (¶ 17); and

12

f.    The Copyrighted Work is the content to which UMA restricted access to only authorized users (¶ 18).

UMA clearly understands the conduct which is complained of:

a.    UMA was aware that its license to use the Copyrighted Work had expired (¶ 24);

b.    UMA attempted to negotiate a continuation of the license to use the Copyrighted Work (¶¶ 24 and 25);

c.    UMA abruptly abandoned its attempt to negotiate a continuation of the license to use the Copyrighted Work (¶ 25);

d.    UMA stopped reporting enrollment information after July 31, 2018 (¶ 20); and

e.    UMA continued to use the Copyrighted Work after July 31, 2018, without authorization (¶ 26.

UMA argues that the complaint does not adequately identify the Copyrighted Work or which portions of it have been infringed by UMA. On the contrary, the registration certificate attached to the complaint identifies the Copyrighted Work by its title "Discover Office 2016 Comprehensive" and its author and owner, PC Pal Solutions, Inc. This is a work with which UMA is intimately familiar. UMA used the PC Pal content in 2018 pursuant to license. UMA regularly reported enrollments in classes where PC Pal's content was in use. UMA paid license fees

for PC Pal's content.  UMA attempted to negotiate an extension of its license directly with PC Pal.  UMA abandoned those negotiations and decided to continue use of the Copyrighted Work without license or authorization.  UMA, once confronted with its infringement, represented to PC Pal that it had ceased use of the Copyrighted Work. If UMA wishes to contend that the work covered by the registration is not the work it has infringed, the time to do that would be after the factual record has been sufficiently developed to establish the copyrightable content subsumed within the registration and to compare it with what UMA was using in its courses after July of 2018.

UMA, in its motion on page 13, cites a number of cases for the proposition that courts can examine copyright infringement claims for substantial similarity as to a work's protected material at the motion to dismiss stage. Substantial similarity is not at issue here. UMA is not accused of reproducing, distributing, and displaying content substantially similar to the Copyrighted Work; it stands accused of unauthorized use of the Copyrighted Work itself.

### C. Stay of This Case and Referral to the Copyright Office is Unwarranted and Premature

UMA's final attempt to stave off accountability for its infringement takes the form of a request for a stay of the case and referral of this matter to the Copyright Office.  UMA's request should be denied.

14

PC Pal has secured a registration for the Copyrighted Work. That registration was secured *before* first publication of the work, and constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c) provides, in part: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate."

At this point, the well-pled allegations in the complaint must be viewed as true and must be viewed in the light most favorable to PC Pal. *Erickson v. Pardus*, 551 U.S. 89 (2007); *Kirby Rambo Collections, Inc. v. Lee County,* 2018 WL 2298623 (M.D. Fla. 2018).

Nevertheless, UMA has requested that the Court take the extraordinary step of staying this case and referring the case to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2).  UMA supports its request with an inapposite reference to a case with a materially different and lengthy procedural history in which the district court stayed a case only <u>after</u> the close of discovery and <u>after</u> partial summary judgment had been entered on a fully developed factual record.

UMA's requested stay and referral is premature at this early stage of the proceedings and should be seen for what it is – a pure delay tactic.  There are no crystallized inaccuracies in PC Pal's copyright registration; only UMA's bald

allegations in a motion to dismiss. There are no citations to authority in similar cases suggesting that the Copyright Office would invalidate or alter its certificate. The statute does not require or mention a stay of proceedings nor does it mandate the timing of a referral.

The Court should deny UMA's request and allow this plausible claim for copyright infringement to proceed to the merits.

## CONCLUSION

For the reasons cited above, the Court should deny UMA's Motion to Dismiss and direct UMA to answer the complaint.

Respectfully submitted,


*Christopher S. Knopik*
Christopher S. Knopik, Esq.
FL Bar No. 378348
Brian P. Kopp, Esq.
FL Bar No. 0104093
Betras, Kopp & Harshman, LLC
1611 West Platt Street
Tampa, FL 33606
(813) 333-9400 Phone
(813) 333-9422 Fax
cknopik@bhlaws.com
bkopp@bhlaws.com

16

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 10th day of August, 2021, I electronically

filed the foregoing with the Clerk of the Court by using the CM/ECF system, which

will send a notice electronically to all counsel of record.


<u>/s/ Christopher S. Knopik</u>
Attorney

17